UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SAFEPOINT INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO. 22-948 |
| MICHAEL PARNELL, ET AL. | SECTION "R" (2) |

## ORDER AND REASONS

Before the Court is defendants Michael and Catherine Parnell's motion to dismiss plaintiff Safepoint Insurance Company's ("Safepoint") complaint for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative, for failure to state a claim under Rule 12(b)(6).[1] Plaintiff opposes the motion.[2] Because plaintiff has sufficiently alleged it has standing to bring this action, and has plausibly alleged a claim to a declaratory judgment, the Court denies defendants' motion.

## I.   BACKGROUND

This case arises from an insurance dispute. Defendants Michael and Catherine Parnell are Louisiana homeowners whose property allegedly

---

[1]   R. Doc. 7.
[2]   R. Doc. 9.

sustained damage during Hurricane Ida on August 29, 2021.[3] Defendants' home, located in Terrebonne Parish, was insured under a homeowner's policy issued by Safepoint.[4] The homeowner's policy contained coverage limits of $271,000 on the dwelling, $27,100 on other structures, and $27,100 on the fair rental value.[5] On September 5, 2021, Safepoint inspected defendants' property, and paid defendants $66,936.66 for damage to the interior and exterior of their property.[6] Safepoint additionally paid $7,496.64 to Big West Building Services to tarp defendants' property.[7]

On February 7, 2022, defendants provided Safepoint with a loss estimate from GLS & Associates of $281,297.31.[8] On March 9, 2022, given the "obvious dispute" between the parties in the amount of loss, plaintiff invoked the policy's appraisal provision, a provision of the policy that becomes available when the parties cannot agree about the amount of a particular loss.[9] The appraisal provision provides:

---

[3]  R. Doc. 1 ¶ 7. Defendants' motion to dismiss also states that their property sustained damage on September 14, 2021 from Hurricane Nicholas. R. Doc. 7-2 at 1.
[4]  R. Doc. 1 ¶¶ 2, 5-6.
[5]  *Id.* ¶ 6.
[6]  *Id.* ¶ 8.
[7]  *Id.* ¶ 9.
[8]  *Id.* ¶ 10.
[9]  *Id.* ¶ 11.

2

### 8. Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.[10]

On March 23, 2022, Safepoint requested an inspection of defendants' property by an engineer "to opine on the causation of the alleged damage that would serve as a resource for the appraisers during the appraisal process."[11] Safepoint asserts that its engineer request was made pursuant to the policy provision entitled "Your Duties After Loss," which requires property owners to "[s]how the damaged property" to Safepoint as often as Safepoint "reasonably require[s]."[12] Defendants refused to show their property to Safepoint's engineer.[13]

---

10   *Id.* ¶ 10.
11   *Id.* ¶ 11.
12   *Id.* ¶ 12.
13   *Id.* ¶ 13.

On April 8, 2022, Safepoint filed a complaint for declaratory judgment against defendants, seeking a judgment declaring that Safepoint's licensed civil engineer is entitled to an inspection of defendants' property in order to investigate defendants' claim of structural damage to their property.[14] Defendants now move to dismiss Safepoint's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), challenging both the merits of plaintiff's claim and its standing to sue.[15]

## II.    RULE 12(b)(1) MOTION

Defendants contend that Safepoint lacks standing to bring a declaratory judgment action. In any suit in federal court, the issue of standing presents a "threshold jurisdictional question." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Because a motion to dismiss for lack of standing challenges the Court's subject matter jurisdiction, it is governed by Federal Rule of Civil Procedure 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017). A motion to dismiss for lack of standing may be either "facial" or "factual." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). An attack is "factual" if the defendant "submits affidavits,

---

14    *Id.* ¶ 16.
15    R. Doc. 7.

4

testimony, or other evidentiary materials." *Id.* But when, as here, the defendant makes a "facial attack" on the complaint and the Court's jurisdiction to hear the case, the Court merely looks to the sufficiency of the allegations in the complaint because they are presumed to be true. *Id.* The "burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The Fifth Circuit has identified a three-step inquiry for determining whether to decide or dismiss a complaint for declaratory relief. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The first step requires a determination of whether the declaratory action is justiciable. *Id.* Second, if the Court has jurisdiction, it must "resolve whether it has the 'authority' to grant declaratory relief in the case presented." *Id.* (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993)). Third, the Court must "determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* (citing *Travelers*, 996 F.2d at 778). At issue here is the first step of the inquiry. Specifically, defendants argue that plaintiff's complaint should be dismissed

for lack of standing because it has not sufficiently alleged facts to show that a substantial controversy of sufficient immediacy and reality exists.[16]

The requirement that a party have standing to bring suit flows from Article III of the Constitution, which limits the scope of the federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. art. III, § 2. Article III is the source of the "actual controversy" requirement in the Declaratory Judgment Act, which provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019). To show an actual controversy, the dispute at issue "must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Although a declaratory judgment "cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts . . . , declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit." *Id.* At its core, "the question in each case is whether the facts alleged, under all the

---

[16] R. Doc. 7-3 at 5.

circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Court finds that Safepoint has plausibly alleged a justiciable declaratory judgment claim. First, the controversy between the parties over their obligations under the insurance policy is "definite and concrete." *MedImmune*, 549 U.S. at 127. Second, there is a "real and substantial controversy" between parties with adverse legal interests. *Id.* Safepoint asserts that under the contract, it has a right to inspect defendants' property, and that defendants' refusal to make their property available for an inspection by Safepoint's engineer constitutes a material breach of the contract.[17] On the other hand, defendants assert that Safepoint has attempted to "suspend" the appraisal process, in violation of their contract, by requesting an engineering opinion.[18] Such a dispute over the terms of a contract, with each side alleging that the other breached material terms of the contract, is sufficient to allege that there is a substantial controversy

---

[17]   R. Doc. 1 ¶¶ 11-15.
[18]   R. Doc. 7-3 at 6.

7

between the parties. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937) (noting that a dispute over the "legal rights and obligations arising from the contracts of insurance" was "definite and concrete" when before bringing suit "the parties had taken adverse positions with respect to their existing obligations"). Moreover, such a dispute over the legal rights and obligations under a contract is "manifestly susceptible of judicial determination." *Id.*

Further, Safepoint has alleged facts showing a likelihood that it will suffer future injury "of sufficient immediacy and reality" if it is unable to confirm its rights under the insurance policy. *MedImmune*, 549 U.S. at 127; *see also Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) ("In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."). Specifically, Safepoint alleges in its complaint that "throughout the claims process" defendants have alleged that they are entitled to contractual damages and extra-contractual damages under Louisiana revised statutes sections 22:1892 and 22:1973.[19] *See Frye*, 953 F.3d at 295 (noting that threats of litigation can be sufficiently

---

[19]  R. Doc. 1 ¶ 4.

8

immediate to create a justiciable controversy, even if those threats are "indirect or implicit or covert" (quoting *Vantage Trailers*, 567 F.3d at 750)); *cf. Nat'l Sec. Fire & Cas. Ins. Co. v. Townsend*, No. 17-64, 2018 WL 4407253, at *3 (N.D. Miss. Sept. 17, 2018) (finding that there was not a "definite and concrete dispute" between the parties because there was no allegation that defendant was a party to the insurance policy, and because plaintiff "has not alleged" that the defendant "has threatened litigation regarding the policy").

Safepoint also asserts that if defendants fail to make their property available for an engineering inspection, the appraisers will be unable to determine the extent of the alleged structural damage to the property, leading to difficulties in determining the amount of loss.[20] The Court finds that this injury is of sufficient immediacy to warrant declaratory relief given that Safepoint represents that the appraisal inspection has already occurred,[21] and the appraisal provision contains strict deadlines for various events once the provision is invoked. Defendants' argument that Safepoint's failure to send out an engineer for almost nine months after the storm is inconsistent with Safepoint's claim that there is a substantial and immediate controversy is without merit.[22] Safepoint invoked the appraisal provision

---

20    R. Doc. 9 at 2.
21    *Id.*
22    R. Doc. 7-3 at 6.

9

slightly over a month after receiving defendants' loss estimate.[23] And two weeks after invoking the appraisal provision, Safepoint requested the inspection of defendants' property by an engineer.[24] Given that Safepoint represents that the engineer's opinion would "serve as a resource for the appraisers during the appraisal process," the Court finds that Safepoint's request for an engineer's inspection within two weeks of invoking the appraisal process is sufficient to allege an immediate controversy.

In sum, the Court finds that Safepoint's complaint alleges the existence of a justiciable controversy, and that it has standing to bring a declaratory judgment action in this matter. The Court thus denies defendants' motion to dismiss for lack of standing under Rule 12(b)(1).

### III. RULE 12(b)(6) MOTION

In the alternative, defendants assert that if the Court finds that Safepoint has standing to bring a declaratory judgment action, the Court should dismiss the action for failure to state a claim under Rule 12(b)(6).[25] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

---

[23] *Id.* ¶¶ 10-11.
[24] *Id.* ¶ 11.
[25] R. Doc. 7-3 at 7-8.

10

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Here, plaintiff has plausibly alleged a claim to enforce its rights under the contract. Defendants only grounds for the dismissal of plaintiff's complaint under Rule 12(b)(6) is their assertion that because the two contractual provisions Safepoint relies on—the appraisal and duties after loss provisions—are ambiguous, under Louisiana law they should be construed against Safepoint and in favor of the insured.[26] *See S. States Masonry, Inc. v. J.A. Jones Constr. Co.*, 507 So. 2d 198, 201 (La. 1987) (stating that if there are ambiguous provisions in a contract, they "must be interpreted against the party who prepared the agreement" (citing La. Civ. Code art. 2056)); *Arctic Slope Regional Corp. v. Affiliated FM Ins. Co.*, 564 F.3d 707, 709-10 (5th Cir. 2009) (noting that ambiguities in insurance

---

26   *Id.*

11

contracts are "to be construed against the insurer and in favor of coverage"). Defendants contend that the appraisal provision is "at best" ambiguous as to whether Safepoint is allowed to put the appraisal process on hold in order to seek an additional inspection of defendants' property, and that the duties after loss provision makes the policy "no less ambiguous in this context."[27] Defendants do not explain how construing the allegedly ambiguous contractual appraisal provision in their favor would require the dismissal of plaintiff's complaint.

The Louisiana Civil Code sets forth the guiding principles for construing contracts in Louisiana. *See Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). The Court must interpret each provision of a contract in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050. When the terms of a contract are clear and unambiguous and do not lead to absurd results, the Court interprets them as a matter of law. La. Civ. Code art. 2046. Should ambiguities remain in an insurance policy after applying general rules of contract interpretation, such ambiguities are to be strictly construed against the insurer and in favor of coverage. La. Civ. Code art. 2056. An insurance policy is "ambiguous" only when it is susceptible to two or more

---

[27] *Id.* at 7.

interpretations, and each of the alternative interpretations is reasonable. *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998).

Here, the Court finds that the insurance contract is not susceptible to two or more interpretations. There is nothing in the plain language of the appraisal provision, or any other provision in the contract, that would suggest that once the appraisal provision has been invoked, it can be suspended by a party's request for an engineering inspection. Moreover, neither party contends that any provision in the contract entitles either party to put an appraisal on hold in order to request an additional inspection. Notably, Safepoint affirmatively states that its request for an engineering inspection "did not suspend the appraisal process."[28] Thus, defendants Rule 12(b)(6) motion is futile even under their own theory, because Safepoint's request for declaratory relief does not seek to suspend the appraisal process and is not based on the allegedly ambiguous part of the appraisal provision. Accordingly, the Court denies defendants' motion to dismiss under Rule 12(b)(6).

---

[28] R. Doc. 9 at 2.

13

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss[29] is DENIED.

New Orleans, Louisiana, this __19th__ day of July, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

29   R. Doc. 7.